Andrew J. Sommer, State Bar No. 192844
CONN MACIEL CAREY LLP
111 West Ocean Blvd., 4th Floor
Long Beach, CA 90802
Telephone: (415) 268-8894
Facsimile: (415) 268-8889
asommer@connmaciel.com

Megan S. Shaked, State Bar No. 274174
CONN MACIEL CAREY LLP
One Sansome Street, Suite 3500
San Francisco, CA 94104
Telephone: (415) 268-8882
Facsimile: (415) 268-8889
mshaked@connmaciel.com

Attorneys for Defendant,
SHAMROCK FOODS COMPANY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON BELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHAMROCK FOODS COMPANY, a corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. **'23CV0779 DMS MSB**<br><br>**NOTICE OF REMOVAL**<br><br>[Civil Case Cover Sheet, Declaration of Natalie Wright, and Notice of Interested Persons Filed and Served Concurrently Herewith]<br><br>**DEMAND FOR JURY**<br><br>San Diego Superior Court Complaint filed on March 24, 2023<br><br>Removal Date: April 27, 2023<br>Trial Date: None Set |

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

PLEASE TAKE NOTICE that Defendant Shamrock Foods Company ("Defendant" or "Shamrock") hereby files this Notice of Removal pursuant to 28 U.S.C. Section 1332, based on diversity of citizenship, in order to effect the removal of the above-captioned action from the Superior Court of the State of California for the County of San Diego. Defendant states that removal is proper for the following reasons:

**PLEADINGS, PROCESS, AND ORDERS**

1. On March 24, 2023, Plaintiff Jason Bell ("Plaintiff" or "Bell"), on behalf of himself and purportedly all others similar situated, filed a class action complaint ("the Complaint") in the Superior Court for the County of San Diego entitled *Jason Bell, individually and on behalf of all others similarly situated, v. Shamrock Foods Company, a corporation; and DOES 1 through 100, inclusive*, Case No. 37-2023-00012325-CU-OE-CTL ("State Court Action"). The Complaint purports to state causes of action on behalf of Plaintiff and the putative class members for: (1) failure to provide meal periods pursuant to Cal. Labor Code §§ 226.7(c), 512(a), 1998; (2) failure to provide rest breaks pursuant to Cal. Labor Code §§ 226.7(c) and 1198; (3) failure to pay all wages pursuant to Cal. Labor Code §§ 200-203; (4) failure to pay overtime pursuant to Cal. Labor Code §§ 510 and 1194; (5) failure to provide accurate wage statements pursuant to Cal. Lab. Code § 226(a); (6) failure to pay all wages twice a month pursuant to Cal. Labor Code § 204; (7) failure to pay all wages upon termination/resignation pursuant to Cal. Labor Code §§ 201-203; and (8) unfair business practices pursuant to Cal. Bus. & Prof. Code § 17200, *et seq*.

2. On or about March 28, 2023, Defendant was served with the Summons, Complaint, and notices and forms from the State Court Action. A true and correct copy of these documents is attached to this Notice of Removal as **Exhibit A** and incorporated herein by reference.

3. On April 26, 2023, Defendant filed an answer to the Complaint in the State Court Action. A true and correct copy of the answer is attached hereto as **Exhibit B** and incorporated herein by reference.

4. The documents attached as **Exhibit A** and **B** constitute all pleadings, process, and orders served on and by Defendant in the State Court Action.

///

///

**TIMELINESS OF REMOVAL**

5.  This Notice of Removal is timely pursuant to 28 U.S.C. section 1446(b) because it is being filed within 30 days of service of the Complaint on Defendant.

**DEFENDANT CONSENTS TO REMOVAL**

6.  The only named defendant is Shamrock, which consents to removal of this State Court Action.

**BASIS FOR REMOVAL: DIVERSITY OF CITIZENSHIP, CAFA**

7.  For diversity purposes, a person is a "citizen" of the state in which he is domiciled. See *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). "A person's domicile is [his] permanent home, where [he] resides with the intention to remain permanently or indefinitely." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); see *Lew v. Moss*, 797 F.2d 747, 749-750 (9th Cir. 1986). A party's residence is *prima facie* evidence of his domicile. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

### Plaintiff is a Citizen of California

8.  Plaintiff has alleged in the Complaint that he is a "resident of the County of San Diego, in the State of California." Complaint, ¶ 6. During his employment with Defendant from approximately May 30, 2022 to August 11, 2022, Plaintiff worked for Shamrock and claimed residency in California. Declaration of Natalie Wright ("Wright Dec."), ¶¶ 4-5. Additionally, the job application that Mr. Bell filled out with Defendant on or about May 27, 2022 and tax forms Mr. Bell filled out while employed with Defendant listed a Poway, California address for Mr. Bell. *Id*. at ¶ 4.

9.  Plaintiff, therefore, was, at the time of the filing of the State Court Action, and remains, a citizen of California. Further, more than two-thirds of the members of the putative class are citizens of the State of California. Wright Dec., ¶ 6.

**Defendant Shamrock Foods Company is an Arizona Corporation**

10. Defendant is now, and was at the time of the filing of this State Court Action, a citizen of a state other than California within the meaning of 28 U.S.C. section 1332(c)(l).

11. Pursuant to 28 U.S.C. section 1332(c)(l), "a corporation shall be deemed to be a citizen of every state...by which it has been incorporated and of the State and ... where it has its principal place of business...." The United States Supreme Court's decision in *The Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010) clarified the meaning of Section 1332(c). Specifically, the Supreme Court held that a corporation's "principal place of business" for determining its citizenship is the corporation's "nerve center," which is "where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 1192.

12. Defendant was, at the time of the filing of the State Court Action, and remains, incorporated under the laws of the State of Arizona. Wright Dec., ¶ 3; see also Complaint, ¶ 7. Defendant's principal place of business is located in Phoenix, Arizona. Wright Dec., ¶ 3. At all times since the filing of the State Court Action, the majority of Defendant's officers have worked from its headquarters in Phoenix, Arizona, and have directed, controlled and coordinated Defendant's activities from its headquarters in Arizona. *Id*. Defendant is also the only defendant named in this action.

13. Therefore, Defendant is a citizen of the State of Arizona.

**The Doe Defendants' Citizenship Has No Bearing on Diversity**

14. The presence of Doe defendants in this case has no bearing on diversity of citizenship for removal purposes. See 28 U.S.C. § 1441(b)(1) ("[i]n determining whether a civil action is removable…the citizenship of defendants sued under fictitious names shall be disregarded"). Thus, the existence of Does 1 through 100 does not deprive this Court of jurisdiction.

///

**CAFA JURISDICTION**

15. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2) and (5) provide that a district court shall have original jurisdiction of a class action if (1) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) the action involves one hundred (100) or more putative class members; and (3) any member of the putative class is a citizen of a state different from any defendant.

### Size of the Class

16. Shamrock has employed approximately 696 putative class members in California as delivery drivers during the class period of March 24, 2019 to April 14, 2023 ("Class Period"). Wright Dec., ¶ 6. This satisfies the requirement under CAFA of 100 class members.

### Minimal Diversity

17. Diversity of citizenship is established under CAFA on the basis that Plaintiff, a member of the putative class, is a citizen of the State of California, and Shamrock is a citizen of the State of Arizona. Under Section 1332(d)(2) of CAFA, only one member of the putative class must be a citizen of a state different from any defendant. Because Shamrock and Plaintiff are citizens of different states, minimal diversity exists.

### Amount in Controversy

18. Removal is appropriate when it is more likely than not that the amount in controversy exceeds the jurisdictional requirement, which under CAFA is $5,000,000 in the aggregate. See, *e.g.*, *Cohn v. PetsMart, Inc.*, 281 F.3d 837, 839-840 (9th Cir. 2002).

19. The U.S. Supreme Court in *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547 (2014) held that a defendant's notice of removal under CAFA need include only a "plausible allegation that the amount in controversy

exceeds the jurisdictional threshold." When the defendant's assertion of the amount in controversy is challenged, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million, where, as here, damages are unstated in the complaint. *Ibarra v. Manheim, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

20. Although Shamrock denies that this action is suitable for class action treatment and denies that Plaintiff and the putative class members are entitled to any relief, the amount in controversy in this class action, in the aggregate, well exceeds $5,000,000, exclusive of interest and costs, for the purpose of removal based on the bare factual allegations in the Complaint.

<u>Baseline Variables</u>

21. Calculation of the estimated amount in controversy is based on the following variables and/or assumptions:

    a. During the Class Period (*i.e.*, March 24, 2019 to April 14, 2023), Shamrock has employed approximately 696 putative class members ("Putative Class"). Wright Dec., ¶ 6. The Putative Class has worked at some time during their employment within the Class Period as delivery drivers. *Id.*

    b. Assuming for the purpose of this calculation only, during the Class Period, the Putative Class members worked five workdays per week and on average over 10 hours per workday as delivery drivers.

    c. The Putative Class worked approximately 240,680 workdays for Shamrock during the Class Period. Wright Dec., ¶ 8. The average hourly rate of pay for this Putative Class during the Class Period was $33.70 per hour. *Id*. at ¶ 7.

    d. Approximately 338 members of the Putative Class left their employment with Shamrock from March 24, 2020 to April 14, 2023. Wright Dec., ¶ 9. The lowest average hourly rate of pay for this group was $31.18 per hour. *Id.*

<u>Meal Period Claim</u>

22. The Complaint alleges that "Drivers were not given the opportunity to

6
NOTICE OF REMOVAL: CASE NO. _____

take any meal breaks" and that "Defendants did not have a policy or procedure which allowed the Plaintiff and the Class to take meal breaks during their workday." Complaint ¶ 45. The Complaint seeks to recover for missed meal periods pursuant to Labor Code section 226.7. Specifically, Labor Code section 226.7(c) provides a penalty of "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." The meal period claim under the Unfair Competition Law is subject to a four-year period of limitations. *Tajonar v. Echosphere, L.L.C.*, 2015 U.S. Dist. LEXIS 86697 (S.D. Cal. July 2, 2015).

23. Defendant conservatively assumes for the purpose of this analysis only that the Putative Class members were not allowed one meal period on each of their workdays, based on the allegation that "Drivers were not given the opportunity to take *any* meal break." Complaint ¶ 45, emphasis added.

24. Based thereon, the premium pay for the 696 Putative Class is calculated as $8,110,916 (average hourly rate of $33.70 multiplied by 240,680 workdays).

Rest Period Claim

25. The Complaint alleges that "Drivers were not given the opportunity to take any rest breaks" and that "Defendants did not have a policy or procedure which allowed the Plaintiff and the Class to take rest breaks during their workday." Complaint ¶ 51. The Complaint seeks to recover for missed rest periods pursuant to Labor Code section 226.7. Specifically, Labor Code section 226.7(c) provides a penalty of "one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." The rest period claim under the Unfair Competition Law is subject to a four-year period of limitations. *Tajonar*, supra, 2015 U.S. Dist. LEXIS 86697.

26. Defendant conservatively assumes for the purpose of this analysis only that the Putative Class members were not allowed one rest period on each of their

workdays, based on the allegation that "Drivers were not given the opportunity to take *any* rest break." Complaint ¶ 51, emphasis added. Based thereon, the premium pay for the 696 Putative Class members is calculated as $8,110,916 (average hourly rate of $33.70 multiplied by 240,680 workdays).

### Wage Claim

27. The Complaint alleges that "Drivers were not compensated for the additional hour(s) they worked each workday. They were not paid wages for working through their meal and rest breaks." Complaint, ¶ 59.

28. Defendant conservatively assumes, for the purpose of this analysis only, this claim is based on Putative Class members working through one missed 30-minute meal period per day. Assuming the 696 Putative Class members earned an average hourly rate of pay of $33.70 and worked through a 30-minute meal period on each workday in the Class Period, the wage claim for unpaid 30-minutes would be $4,055,458 (the average hourly rate multiplied by 240,680 workdays). Wright Dec., ¶¶ 7-8. This figure does not include any amount for damages prayed for under the Sixth Cause of Action for failure to pay all wages twice a month pursuant to Cal. Labor Code section 204. Complaint, ¶¶ 75-82, Prayer.

### Waiting Time Penalties

29. California law provides that if an employer willfully fails to pay the wages of an employee who is discharged or quits, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid…but the wages shall not continue for more than 30 days." Cal. Labor Code § 203(a). The action alleges that Defendant has failed "to pay wages upon termination/resignation in violation of state law." Complaint, ¶¶ 26, 86.

30. Plaintiff's claim for waiting time penalties pursuant to Labor Code sections 201 to 203 is listed in the caption of the Complaint but is not properly plead. This claim is included assuming Plaintiff has not abandoned this claim. This claim appears to be premised on the Plaintiff not receiving premium pay under

Labor Code section 226.7 for the alleged non-provision of meal and rest periods. The Complaint does *not* state that Shamrock ever made premium payments to these Putative Class members for the alleged non-provision of meal and rest periods. The waiting time penalty claim is subject to a three-year statute of limitations. *Pineda v. Bank of America, N.A.*, 50 Cal.4th 1389 (2010).

31. Assuming only for the purpose of this analysis that the 388 former Shamrock employees who are members of the Putative Class were due premium pay upon separation for allegedly not being provided meal periods or allowed rest periods, this group would be owed waiting time penalties of approximately $3,629,352. This figure is based on the daily rate of pay for the group multiplied by 30 days. See *Mamika v. Barca*, 68 Cal.App.4th (1998) (daily rate calculated by multiplying hourly rate by hours worked each day, and then the daily rate is multiplied by the number of days of nonpayment, up to 30 days). The breakdown for the calculation is as follows:

    a. Assuming for purposes of this calculation only that during the limitations periods, approximately 338 Putative Class members earned an average hourly rate of pay of $31.18 and worked an approximately 10-hour workday, which when multiplying $31.18 by 10 and 388 results in a daily rate of pay of approximately $120,978 for the group. When multiplying the daily rate of pay by 30, the maximum waiting time penalties would be $3,629,352. Wright Dec., ¶ 9.

<u>Overtime Claim</u>

32. The Complaint alleges that "Drivers were expected to work through their meal breaks on each workday. As such the Drivers worked an additional half hour beyond their regular schedule. On occasions this additional half hour was to be compensated in the form of overtime since the Drivers had already worked 8 hours in that day." Complaint, ¶ 65.

33. Defendant conservatively assumes for the purpose of this analysis only that this wage claim amounts to $506,932 (calculated as 30 minutes multiplied by

25% of 240,680 workdays, at 50% of the hourly rate of $33.70).

<u>Wage Statement Claim</u>

34.     The Complaint alleges that "Defendants are liable (sic) violating Labor Code §§ 226 for failing to provide accurate itemized wage statements to employees." Complaint, ¶ 73. The Complaint seeks "actual damages and penalties" and attorneys' fees and costs. Complaint, ¶ 73. California Labor Code section 226, subdivision (e) provides for penalties in the amount of fifty dollars for the initial pay period in which a violation occurs and one hundred dollars per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000 per employee.

35.     For the purpose of this analysis only, the allegations in the Complaint that wage statements were inaccurate supports the alleged existence of a violation for Plaintiff each payroll period during the one-year statute of limitations (*i.e.*, March 24, 2022 to April 14, 2023). See *Archuleta v. Avcorp Composite Fabrication, Inc.*, cv-18-8106, 2018 U.S. Dist. LEXIS 206495 (CD Cal. Dec. 6, 2018) (reasonable to assume a 100% violation rate for wage statements where employees worked at least one day per pay period with allegations about meal period violations).

36.     Based thereon, the penalties for allegedly issuing non-compliant wage statements would be $675,900, which is calculated by multiplying the first 396 total wage statements issued to class members during the applicable limitations period by $50 (the statutorily authorized penalty for the first violation), and by $100 for the remaining 6,561 wage statements during this period to this group. Overall, there were 6,957 wage statements during the applicable one-year period. Wright Dec., ¶ 10.

<u>Attorneys' Fees</u>

37.     When the underlying substantive law provides for an award of attorneys' fees, the removing party may include that amount in its calculation of the

amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (attorney's fees may be counted towards amount in controversy if recoverable under statute or contract).  The Court may take into account a reasonable estimate of attorneys' fees based on the relief a court may grant on the complaint if the plaintiff is victorious.  *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (4th Cir. 2018); see *Lucas v. Michael Kors (USA), Inc.*, No. CV 18-1608, 2018 U.S. Dist. LEXIS 78510 (C.D. Cal. May 9, 2018) (*Chavez's* "broad holding strongly suggests that the Ninth Circuit would find it appropriate to consider post-removal attorney's fees").

38.  Plaintiff seeks attorneys' fees in the Complaint that should therefore be included in analyzing the amount in controversy.

39.  As detailed above, the amounts in controversy that Defendant has estimated for premium pay and penalties on the various claims exceeds $5,000,000. Therefore, it is reasonable to assume that Plaintiff is seeking at least over $1,000,000 in attorneys' fees based on the benchmark 25 percent award for attorneys' fees calculated on a percentage of the recovery basis.  *Stafford v. Dollar Tree Stores*, No. 2:13-cv-01187, 2014 U.S. Dist. LEXIS 42564 (E.D. Cal. March 28, 2014).

40.  Any addition of attorneys' fees would be over the amount calculated for alleged damages as analyzed above and would further increase the amount in controversy well beyond the required $5,000,000 threshold for CAFA jurisdiction.

41.  Accordingly, the diversity, class size and amount in controversy under CAFA are satisfied pursuant to 28 U.S.C. §§ 1332 and 1441, and therefore the State Court Action is removable.

**VENUE**

42.  Plaintiff originally filed this action in the Superior Court of the State of California, County of San Diego.  The County of San Diego lies within the jurisdiction of the United States District Court, Southern District of California.

Therefore, venue also lies in the Southern District of this Court pursuant to 28 U.S.C. §§ 84(c), 1441(a), and 1446(a).  This Court is the United States District Court for the district within which the State Court Action is pending.  Thus, venue lies in this Court pursuant to 28 U.S.C. § 1441(a).

**SERVICE OF NOTICE OF REMOVAL ON STATE COURT**

43. A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of San Diego, as required under 28 U.S.C. § 1446(d).

WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California.

**JURY DEMAND**

Defendant hereby elects a trial by jury on all issues triable by a jury in the above-entitled action.

DATED: April 27, 2023                    CONN MACIEL CAREY LLP

By:   /s/ Andrew J. Sommer
      Andrew J. Sommer
      Megan S. Shaked
      Attorneys for Defendant
      SHAMROCK FOODS COMPANY